**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 15 1998**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

NESTOR LONDONO,

Defendant-Appellant.

No. 97-7035
(D.C. No. CV-96-161-S)
(E.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **BALDOCK**, **EBEL**, and **MURPHY**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Defendant Nestor Londono appeals from the district court's order denying his motion to vacate sentence filed pursuant to 28 U.S.C. § 2255.[1] The district court denied Mr. Londono's motion, and we affirm in part and reverse in part.

Because the United States is a party in this case, Mr. Londono had sixty days from the date of the district court's judgment, or until January 13, 1997, to file his notice of appeal. See Fed. R. App. P. 4(a)(1). Because he did not file his notice of appeal until February 11, 1997, we initially must determine whether this court has jurisdiction to entertain Mr. Londono's appeal.

Filing requirements for appeals are mandatory and jurisdictional. See Senjuro v. Murray, 943 F.2d 36, 37 (10th Cir. 1991). Federal Rule of Appellate Procedure 4(a)(5) provides, however, that, upon a showing of excusable neglect or good cause, the district court may grant an extension of time for filing a notice of appeal upon motion of the appellant filed no later than thirty days after

---

[1] Mr. Londono filed his § 2255 motion on April 5, 1996. At the time Mr. Londono filed his notice of appeal, decisions of this court applied the 28 U.S.C. § 2253(c) certificate of appealability requirements of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) to cases filed prior to AEDPA's April 26, 1996 effective date. In light of the Supreme Court's recent opinion in Lindh v. Murphy, 117 S. Ct. 2059, 2068 (1997), however, we have held that § 2255 movants who filed their actions prior to AEDPA's effective date need not obtain a certificate of appealability to proceed on appeal. See United States v. Kunzman, 125 F.3d 1363, 1364 n.2 (10th Cir. 1997), cert. denied, ___ S. Ct. ___, 1998 WL 86544 (1998). Therefore, we need not address Mr. Londono's motion for a certificate of appealability filed in this court, and the same is hereby dismissed.

expiration of the applicable Rule 4(a)(1) time. If the motion is filed within the thirty-day time frame, the motion may be considered by the district court ex parte. See Fed. R. App. P. 4(a)(5). If the motion is filed after the thirty-day grace period, notice must be given to all parties in accordance with local rules. See id.

The district court denied defendant's § 2255 motion on November 14, 1996. On February 10, 1997, defendant mailed his notice of appeal, an "Ex Parte Motion Seeking Permission of the Court to File Notice of Appeal Beyond Time Restrictions," and a motion to proceed on appeal in forma pauperis to the district court. The district court filed these documents on February 11, 1997, and granted defendant's motion to file out of time on March 12, 1997. This court docketed defendant's appeal on March 19, 1997.

Because Mr. Londono filed his motion for extension of time outside the thirty-day grace period, and because it was unclear as to whether the government had been given the required notice, this court, on its own motion, challenged its jurisdiction to entertain Mr. Londono's appeal. In its response to our jurisdictional challenge, the government advised, however, that they received notice of Mr. Londono's motion for extension of time to file his notice of appeal on February 13, 1997. Therefore, because the government received the proper notice, the district court retained jurisdiction to rule on Mr. Londono's motion, see Oda v. Transcon Lines Corp., 650 F.2d 231, 232 (10th Cir. 1981), and its

-3-

grant of an extension of time to file a notice of appeal to Mr. Londono was appropriate. Having thus determined that this court has jurisdiction to consider this appeal, we now turn to the merits of Mr. Londono's claims.

## I. Background

Mr. Londono was tried and convicted on one count of conspiracy to possess with intent to distribute cocaine in violation of 21 U.S.C. § 846 and one count of interstate travel in aid of racketeering in violation of 18 U.S.C. §§ 1952(a)(2) and (3), involving a drug trafficking conspiracy extending from October 1988 until May 1990. The evidence at trial established that Mr. Londono distributed cocaine from his bakery business and his home in Miami, Florida. His grand jury indictment identified Jose Alberto Munoz, Reynel Lugo-Avila, Bob Wayne Ford, Connie Jean Ford, and others, both known and unknown, as co-conspirators. Mr. Londono was sentenced to concurrent prison terms of 292 months on the conspiracy conviction and 60 months on the interstate travel in aid of racketeering conviction.

Mr. Londono appealed, claiming (1) the trial court abused its discretion when denying motions for mistrial based upon the jury's inability to reach a verdict; (2) he was denied his constitutional right of confrontation when hearsay evidence was admitted at sentencing; (3) there was insufficient evidence to

convict on the interstate travel charge; (4) prosecutorial misconduct in opening and closing statements; and (5) the court abused its discretion in refusing to tender a proposed jury instruction regarding cooperating witnesses' testimony. On April 3, 1992, this court affirmed Mr. Londono's convictions. See United States v. Londono, No. 91-7043, 1992 WL 66724 (10th Cir. Apr. 3, 1992) (unpublished order and judgment). Mr. Londono's subsequent petition for writ of certiorari to the United States Supreme Court was denied.

In Mr. Londono's § 2255 motion to vacate sentence, he claimed ineffective assistance of appellate counsel. Specifically, he asserted that his appellate counsel failed to raise two sentencing errors on appeal: (1) that the district court erred when considering fifty kilograms of cocaine as relevant conduct for purposes of sentencing, and (2) that the court erred by enhancing his sentence four levels as a leader and organizer. In denying Mr. Londono's motion, the district court addressed the sentencing guidelines issues and found them to be without merit. The court then found that Mr. Londono had failed to show that he had been prejudiced by counsel's omission and denied Mr. Londono § 2255 motion as procedurally barred. This appeal followed.

## II. Discussion

"[A] defendant may not raise claims that were not presented on direct appeal unless he can show cause and prejudice resulting from the error." United States v. Cook, 45 F.3d 388, 392 (10th Cir. 1995). Appellate counsel's ineffectiveness in not raising these claims can constitute cause excusing his procedural default. See id. To establish ineffective assistance of counsel, Mr. Londono must show that his appellate counsel's performance fell below an objective standard of reasonableness, and that counsel's deficient performance was prejudicial. See Strickland v. Washington, 466 U.S. 668, 687, 690 (1984). Mr. Londono must prove that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. We review Mr. Londono's ineffectiveness claim de novo. See Brewer v. Reynolds, 51 F.3d 1519, 1523 (10th Cir. 1995).

"When a defendant alleges his appellate counsel rendered ineffective assistance by failing to raise an issue on appeal, we examine the merits of the omitted issue." Cook, 45 F.3d at 392. If the omitted issue proves to be meritless, counsel's failure to raise it does not constitute ineffective assistance. See id. at 393. We therefore turn to the merits of Mr. Londono's claims of sentencing error.

## A. Relevant Conduct

First, Mr. Londono claims that the sentencing court erred in including fifty kilograms of uncharged cocaine as relevant conduct in calculating his base offense level, see U.S.S.G. § 1B1.3. The government has the burden of proving the quantity of drugs for sentencing by a preponderance of the evidence. See United States v. Richards, 27 F.3d 465, 468 (10th Cir. 1994). The information upon which the district court relies must be sufficiently reliable. See id.

When determining a sentencing range, the sentencing guidelines require that a sentencing court include as relevant conduct all acts that were part of the same course of conduct or common scheme or plan as the offense of conviction, "regardless of whether the defendant was convicted of the underlying offenses pertaining to the additional amounts." United States v. Roederer, 11 F.3d 973, 978-79 (10th Cir. 1993) (further quotation omitted). Whether acts are relevant conduct for a participant in a conspiracy is determined by reference to "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and . . . all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity[.]" U.S.S.G. §§ 1B1.3(a)(1)(A), 1B1.3(a)(1)(B).

A finding of "'same course of conduct' does not require a *connection* between the acts in the form of an overall criminal scheme. Rather, the guideline

term contemplates that there be sufficient similarity and temporal proximity to reasonably suggest that repeated instances of criminal behavior constitute a pattern of criminal conduct." United States v. Taylor, 97 F.3d 1360, 1365 (10th Cir. 1996) (quoting Roederer, 11 F.3d at 979) (further quotation omitted).

Relying on the presentence report and the testimony of Special Agent John Hersley, the sentencing court determined that the quantity of cocaine attributable to Mr. Londono for sentencing purposes was seventy-six kilograms. It appears that Mr. Londono does not dispute the use of twenty-six kilograms of cocaine in calculating his base offense level, but only challenges the additional fifty kilograms found to be relevant conduct. Agent Hersley testified that Mr. Munoz informed him that Mr. Londono had supplied Mr. Munoz with twenty-six kilograms of cocaine which in turn were provided to Bob and Connie Ford for distribution to others who redistributed the cocaine for street sale in Florida and parts of Oklahoma and Kansas.

In an interview upon his arrest, Mr. Munoz stated to Agent Hersley that he had been distributing cocaine to Bob Ford, Sr. from "mid to late 1988" until his arrest in May 1990. See Appellee's App. at 21. He stated that he took delivery of all of the cocaine he supplied to the Fords, with the exception of one kilogram, from Mr. Londono, either at Mr. Londono's bakery or at his home. See id. Mr. Munoz related to Agency Hersley that "primarily he would obtain the cocaine to

(sic) Mr. Londono on a front basis, that he would redistribute that cocaine to the Fords and then pay Mr. Londono after that." Sentencing Tr., Supp. Vol. I at 17. He also described a pager communication system between himself and Mr. Londono used for setting up cocaine transactions. See Appellee's App. at 22.

Mr. Munoz testified at Mr. Londono's trial that when he questioned Mr. Londono regarding a delay in an expected cocaine delivery, Mr. Londono showed him a newspaper article reporting the arrest of a woman who Mr. Londono indicated was his supplier. See Trial. Tr., Supp. Vol. II at 53-54; see also Sentencing Tr., Supp. Vol. I at 11. Agency Hersley testified that when this woman, Norse Calle, was arrested, approximately 606 kilograms of cocaine were seized. See Sentencing Tr., Supp. Vol. I at 10. Mr. Munoz stated that Mr. Londono told him he was expecting to receive fifty kilograms of that amount. See id. at 13.

The government need only provide evidence of relevant conduct that satisfies a preponderance of the evidence standard. See Richards, 27 F.3d at 468. The record in this case shows that the government satisfied this burden. Mr. Londono admitted to Mr. Munoz that he was expecting fifty kilograms from his female supplier who had been arrested. The evidence establishes that this fifty kilograms of cocaine was part of "an identifiable behavior pattern, of

specified criminal activity." Roederer, 11 F.3d at 979 (further quotation omitted). Mr. Londono's expectation of delivery of these drugs was reasonably foreseeable "in light of the nature, extent, and purpose of the conspiracy." United States v. Torres, 53 F.3d 1129, 1144 (10th Cir. 1995); see also United States v. Moore, 130 F.3d 1414, 1419 (10th Cir. 1997) (holding that uncharged amounts of drugs may be included as relevant conduct even if the defendant never actually possessed or distributed the drugs). We conclude that there is record support for the district court's determination that these amounts should be considered relevant conduct for purposes of calculating Mr. Londono's sentence. Therefore, Mr. Londono's appellate counsel did not render ineffective assistance when omitting the issue on appeal. See Cook, 45 F.3d at 393 (holding that failure to raise meritless issue does not constitute ineffective assistance of counsel).

We note that in ascertaining whether the uncharged amounts in question may be included as relevant conduct, the district court must make sufficient findings to establish that Mr. Londono "'aided, abetted, counseled, commanded, induced, procured, or willfully caused' the offense in question, or that the acts or omissions were reasonably foreseeable acts or omissions of others in furtherance of a jointly undertaken criminal activity." Taylor, 97 F.3d at 1363 (quoting U.S.S.G. § 1B1.3(a)(1)(A)). Even though it is clear the sentencing court did not make the kind of specific findings required, appellate counsel's failure to

challenge the adequacy of the findings on appeal did not prejudice Mr. Londono in light of the district court's findings in denying Mr. Londono's § 2255 motion. We conclude that a remand for more specific findings would not have afforded appellate counsel another opportunity to persuade the sentencing court, but rather only would have afforded the sentencing court an opportunity to make specific evidentiary findings to explain the enhancement -- a requirement that the district court has now adequately provided.

**B. Leadership Role**

Next, Mr. Londono asserts that his appellate counsel rendered ineffective assistance by failing to challenge the sentencing court's imposition of a four-level enhancement of his sentence for his role as a leader or organizer. In determining whether appellate counsel was deficient for failing to raise an issue on appeal, we have held that counsel's strategic decisions to forego weaker arguments in order to concentrate on those more likely to succeed "is the hallmark of effective advocacy." Cook, 45 F.3d at 394-95 (quotation omitted). Ineffective assistance of appellate counsel may exist, however, if counsel omitted a "'dead-bang winner.'" Id. at 395 (quoting Page v. United States, 884 F.2d 300, 302 (7th Cir. 1989)). We have defined a "dead-bang winner" as "an issue which was obvious from the trial record . . . *and* one which would have resulted in a reversal on

appeal." Id. Here, we conclude that, because a challenge to the sentencing court's four-level enhancement of Mr. Londono's sentence as a leader or organizer is obviously meritorious, its omission from Mr. Londono's direct appeal constitutes ineffective assistance of counsel.

Section 3B1.1(a) of the Sentencing Guidelines provides for a four-level enhancement of a defendant's base offense level "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." This court held that in order to support a leader or organizer enhancement, the sentencing court must find, "first, that the defendant is an organizer or leader; and, second, that the criminal activity involved five or more participants or was otherwise extensive." Torres, 53 F.3d at 1142 (further quotation omitted).

The Sentencing Guidelines provide that, in assessing a defendant's leadership role, the sentencing court should consider

> the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

U.S.S.G. § 3B1.1, Commentary, Application Note 4; see also Torres, 53 F.3d at 1142. It should be emphasized that this enhancement is based on the degree of "control, organization, and responsibility" exerted by the defendant over others,

and is not to be levied against those who are only "important or essential figures" in the criminal enterprise.  <u>Torres</u>, 53 F.3d at 1142. (further quotation omitted).

In <u>Torres</u>, the defendant's presentence report contained a conclusory statement that "[t]he investigation revealed that the defendant was a leader in a criminal organization that involved five or more participants and was otherwise extensive."  <u>Id.</u> at 1143 (further quotation omitted).  In finding the enhancement appropriate, the sentencing court did not consider any of the factors suggested by the commentary to § 3B1.1, but only stated that there were five or more participants involved and that the defendant was "the engine that made this train run."  <u>Id.</u>

In reviewing the record in <u>Torres</u>, this court concluded that there was no evidence that the other coconspirators worked for the defendant, that they received any type of remuneration from the defendant, that the defendant restricted the people to whom the other coconspirators could sell their drugs, that he controlled the manner or the place of delivery of the drugs, that the defendant set the prices at which the drugs could be redistributed or sold, that the defendant recruited people, or that he claimed a right to a larger share of the monetary gain.  <u>See id.</u>  Consequently, we held that the government had failed to carry its burden of proof as to the propriety of the enhancement.  <u>See id.</u>

The analysis employed by this court in <u>Torres</u> is applicable here. In imposing the four-level enhancement to Mr. Londono's sentence, the court stated:

> [T]he Court finds that by a preponderance of the evidence there should be a 4 level increase for an aggravated role in the instant offense because the defendant carried out a leadership role in an otherwise extensive operation in which he was at or near the top. Without him this operation either stops or slows down. And this information comes solely from Munoz through Hersley, and some limited corroboration, believed by the jury, all set out in paragraph 14 of the Presentence Investigation.

Sentencing Trans., Supp. Vol. I at 50.[2]

Paragraph 14 of Mr. Londono's presentence report states:

> The defendant was the highest ranking member or leader of the cocaine distribution structure described in the Offense Conduct section of this report. He was the only apparent member of the organization that dealt with the aforementioned cartel linked cocaine suppliers which is indicative of his rank or position. Through case agents as well as testimony of co-conspirators, it has been established that the defendant was involved in or directed extensive criminal activity throughout the life of the conspiracy charged. Pursuant to

---

[2] We have held that "even if the record evidence overwhelmingly supports the enhancement, appellate fact-finding cannot substitute for the district court's duty to articulate clearly the reasons for the enhancement." <u>United States v. Wacker</u>, 72 F.3d 1453, 1477 (10th Cir. 1995). Because we review whether counsel rendered legally deficient performance and whether this performance prejudiced the defendant under the de novo standard, <u>see</u> <u>Brewer</u>, 51 F.3d at 1523, we have decided the issue based on a thorough review of the record. In remanding, however, we remind the district court that a determination of enhancement under U.S.S.G. § 3B1.1 requires the sentencing court to "make specific findings and 'advanc[e] a factual basis' to support an enhancement." <u>United States v. Ivy</u>, 83 F.3d 1266, 1292 (10th Cir.) (quoting <u>Wacker</u>, 72 F.3d at 1477), <u>cert. denied</u>, 117 S. Ct. 253 (1996).

Section 3B1.1(a), 4 levels are added for the defendant's aggravated role in the offense.

Presentence Report at 4.

In this case, the district court and the government cited numerous parts of the trial transcript in support of the contention that Mr. Londono exercised a leadership and control position in the drug trafficking conspiracy. Our review of these citations to the record reveals only that Mr. Londono supplied cocaine to Mr. Munoz and was paid accordingly, that the drug sales took place in various places including Mr. Londono's bakery and his home, that Mr. Londono fronted cocaine to Mr. Munoz and was paid after Mr. Munoz had resold the drugs to Bob Ford, and that Mr. Londono informed Mr. Munoz that a shipment he was expecting had been delayed because his female supplier had been arrested. These facts would indicate the level of Mr. Londono's involvement in the criminal enterprise, but fail to establish that Mr. Londono organized, led, or controlled the conspiracy. The record is void of evidence demonstrating that Mr. Londono restricted or controlled any of the people to whom Mr. Munoz supplied drugs, that he recruited any of those who distributed or sold the drugs, that he controlled any of the places of redistribution, or that he set any retail prices. Although the record indicates that Mr. Munoz paid Mr. Londono for the cocaine at the price he asked, there is no evidence that Mr. Londono received any other remuneration from the distribution process.

Although the sentencing court may have been correct in its determination that "[w]ithout [Mr. Londono] this operation either stops or slows down," Sentencing Tr., Supp. Vol. I at 50, this is only indicative of Mr. Londono's importance to the drug operation, and not indicative of whether he was a leader or organizer who exercised control over the other persons involved, see Torres, 53 F.3d at 1143. Based on the record before us, we therefore conclude that Mr. Londono did not exert any control over the drug distribution conspiracy other than that inherent in a buyer/seller relationship. See United States v. Owens, 70 F.3d 1118, 1129 (10th Cir. 1995) (holding that the mere fact that defendant supplied cocaine to others, without more, does not support a leadership role enhancement).[3] Under these circumstances, we conclude that appellate counsel's

---

[3] To support a finding that a defendant was a leader or organizer for enhancement under § 3B1.1(a) of the Sentencing Guidelines, the sentencing court must find (1) that the defendant was a leader or organizer, and (2) that the criminal enterprise involved five or more persons or was otherwise extensive. See Torres, 53 F.3d at 1142. We note that four persons, including Mr. Munoz, were named in the grand jury indictment with Mr. Londono, along with others, known and unknown, who were not specifically named. In addition, Mr. Munoz stated to Agent Hersley that he had supplied a person known as John Bailey in Tampa, Florida. See Appellee's App. at 23. Mr. Munoz distributed cocaine to Bob Ford who redistributed it to persons in Oklahoma and Kansas. It appears likely that this evidence would support a finding that the criminal conspiracy of which Mr. Londono was a part included five persons and was extensive. Because we determine that the government did not meet its burden of proof as to the first criteria, that Mr. Londono was a leader or organizer, we need not definitively address the criteria of whether the conspiracy involved five or more persons or was otherwise extensive.

failure to raise the leadership enhancement issue on direct appeal was constitutionally deficient and establishes cause for Mr. Londono's procedural default of the issue. See Cook, 45 F.3d at 392.

As to the prejudice prong of Strickland, we have held that when counsel's deficient performance results in a significantly longer sentence, the prejudice prong of Strickland is satisfied. See United States v. Kissick, 69 F.3d 1048, 1056 (10th Cir. 1995). Here, the sentencing court considered an applicable sentencing guidelines range of between 292 and 365 months based on a base offense level of forty. A four-level reduction would indicate a sentencing range of between 188 and 235 months based on an offense level of thirty-six. We conclude that this significant difference constitutes prejudice under Strickland. See id.

### III. Conclusion

In sum, we determine that the sentencing court correctly calculated the amount of drugs attributable to Mr. Londono for purposes of determining his base offense level. Counsel's decision to omit this issue as weak was appropriate trial strategy, and within an objective standard of reasonable advocacy. See Cook, 45 F.3d at 394-95 (holding that counsel's strategic decision to omit weaker issues does not violate Sixth Amendment's right to effective assistance). Mr. Londono therefore, has failed to establish cause and prejudice resulting from counsel's

failure to raise the issue on direct appeal, and the district court correctly deemed the issue procedurally barred.

Although Mr. Londono did not raise the leadership enhancement issue on direct appeal, we hold that the probable success of the issue is obvious from the record, and, but for counsel's failure to raise the issue, there is a reasonable probability that the outcome of the appellate proceeding would have been different. See Strickland, 466 U.S. at 694. Therefore, Mr. Londono has established cause and prejudice excusing the omission.

We thus AFFIRM the judgment of the United States District Court for the Eastern District of Oklahoma, denying Mr. Londono § 2255 relief on the relevant conduct issue. The district court's denial of relief under § 2255 on the issue of appellate counsel's erroneous failure to raise the issue of improper leadership enhancement is VACATED, and the cause is REMANDED for further proceedings consistent with this order and judgment.

Entered for the Court

Bobby R. Baldock
Circuit Judge

-18-